1

2

3

4

5

6

7

8

9                       UNITED STATES DISTRICT COURT

10                      CENTRAL DISTRICT OF CALIFORNIA

11

GILBERT GONZALES,                ) NO. ED CV 13-663-AS
12                               )
                                 )
13            Plaintiff,         ) **MEMORANDUM OPINION AND**
                                 )
14       v.                      ) **ORDER OF REMAND**
                                 )
15  CAROLYN W. COLVIN, Acting    )
    Commissioner of Social       )
16  Security,                    )
                                 )
17            Defendant.         )
18  _____ )

19

20                          **PROCEEDINGS**

21

22      On April 11, 2013, Plaintiff filed a Complaint seeking review

23  of the Commissioner's denial of Plaintiff's application for

24  disability benefits. (Docket Entry No. 1). On September 30, 2013,

25  the matter was transferred and referred to the current Magistrate

26  Judge.  (Docket Entry No. 13).  On November 1, 2013, Defendant

27  filed an Answer and the Administrative Record ("A.R.").  (Docket

28  Entry Nos. 19, 20).  The parties have consented to proceed before

                                1

a United States Magistrate Judge.  (Docket Entry Nos. 12, 18).  On February 6, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 24).  The Court has taken this matter under submission without oral argument.  See C.D. Cal. R. 7-15; "Case Management Order," filed April 22, 2013 (Docket Entry No. 4).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former aircraft mechanic (A.R. 30), asserts disability beginning June 23, 2007, based on alleged physical and mental impairments.  (Id. 21, 141-49).  The Administrative Law Judge, Tamara Turner-Jones ("ALJ"), examined the record, and heard testimony from Plaintiff and vocational expert ("VE"), Roxane L. Minkus, on November 8, 2011.  (Id. 37-69).

On December 16, 2011, the ALJ issued a decision denying Plaintiff's application for disability benefits.  (Id. 21-31).  The ALJ found that Plaintiff's medically determinable severe impairments – post traumatic head syndrome, headaches, and depression – do not significantly limit his ability to perform basic work activities.  (Id. 23).

The ALJ determined that, notwithstanding these impairments, Plaintiff retains the residual functional capacity ("RFC") to perform medium work and can lift and carry fifty pounds occasionally and twenty-five pounds frequently; can frequently

kneel, stoop, crawl, crouch, and occasionally climb ramps and stairs; should avoid climbing ladders, ropes, and scaffolds; has no limits on the use of his hands for fine and gross finger manipulation; needs to avoid all exposure to unprotected heights and dangerous moving machinery; can interact adequately with coworkers and supervisors, but can have no contact with the general public and no repeated requests for information from co-workers; can maintain concentration, attention, persistence, and pace in at least two hour blocks of time; and, most relevant to the issue presented in this case, "would be able to carry out simple instructions." (Id. 25). Relying on the testimony of the VE, the ALJ determined that Plaintiff was able to perform such work as hand packager (Dictionary of Occupational Titles ("DOT") No. 920.587-018); and industrial cleaner (DOT No. 381.687-018). (A.R. 31).

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date through the date of the ALJ's decision. (Id.).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ failed to properly consider Plaintiff's mental limitations. (Joint Stip. 5).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial

evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not

4

substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21 (citation omitted).

**APPLICABLE LAW**

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability. 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most

jobs." 20 C.F.R. § 404.1521(b); <u>Webb</u>, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." <u>Webb</u>, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. <u>Id.</u>; 20 C.F.R. § 1520(a)(ii); <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding. <u>Webb</u>, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all his impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ

proceeds to step five to determine whether - taking into account the claimant's age, education, work experience and RFC - there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v).  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Tackett, 180 F.3d at 1098.

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are *not* supported by substantial evidence or free from material legal error.[1]  For the reasons discussed below, the case is remanded under sentence four of 42 U.S.C. Section 405(g).

**A.   The ALJ Erred in Evaluating Plaintiff's Mental Limitations**

Consultative psychological examiner Mark D. Pierce, PhD, completed a psychological evaluation of Plaintiff, and issued a report on June 2, 2010.  (A.R. 415-20).  Dr. Pierce concluded as follows:

---

[1]   The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

By today's performance, [Plaintiff] may retain the capacity to complete simple and repetitive vocational skills and to adapt to minimal changes in a work environment. Reasoning capacities are judged potentially capable to this lower level, to the extent the claimant reports reduced abilities with selective ADLs, but that these are not completely precluded.

The claimant would have mild to greater difficulty working effectively with others, due to presented dysthymic adjustment. He can remember and comply with simple one and two part instructions. He could concentrate just adequately for a regular work schedule for a full workweek.

(Id. 420). Dr. Pierce found that Plaintiff was able to complete the patient history form in his own hand and in good detail, a fact inconsistent with "his significant challenges with administered testing." (A.R. 27, 415). Dr. Pierce further noted "surprising testing results," given the fact that Plaintiff was able to understand all test questions, comprehended all aspects of the evaluation, had average verbal response time, and organized if "somewhat underproductive" thoughts. (Id. 27, 417). He further stated that although Plaintiff's vocabulary is "well preserved, giving no indication of word finding challenges, Plaintiff's capacity with the similarities test was "remarkably challenged." (Id. 27, 418). Dr. Pierce also noted "motivational challenges"

with respect to the testing, possibly due to depressive impacts.[2] (Id. 27, 419).

The ALJ reviewed the record relating to Plaintiff's mental impairments and gave significant weight to the opinions of Dr. Pierce and the state agency reviewing medical consultant, D.R. Conte, M.D.:

> The consultative examiner, Dr. Mark Pierce, noted inconsistencies in the claimant's performance level on the battery of psychological tests, thought to be due in part to motivation factors. This is despite the observations and reporting of the psychologist that the claimant had been able to complete the patient history form in his own hand, and in good detail, despite the claimant's demonstrated significant challenges on formal testing.
>
> . . . .
>
> . . . Dr. Pierce concluded the claimant still retained the capacity to complete simple and repetitive vocational skills and to adapt to minimal changes in the work environment . . . and that he was able to remember and comply with simple one and two part instructions . .

---

[2] The ALJ noted that these inconsistencies diminished the persuasiveness of Plaintiff's subjective complaints and alleged limitations relating to his cognitive limitations. (A.R. 27).

9

1
2
3
4

The reviewing medical consultant with the state agency assessed the claimant with the capability to sustain simple repetitive tasks . . . .

5
6

. . . .

7
8
9
10
11
12
13
14
15

In terms of the claimant's mental functioning, the undersigned has given significant weight to the opinions of Dr. Pierce and the reviewing medical consultant with the state agency.   These opinions are generally consistent in that they assess the claimant with the capability to carry out simple tasks with adequate concentration to persist for a workday and work week albeit with some difficulties in relating with others in the workplace.

16
17
18
19
20
21
22

. . . The claimant complains of mood changes and cognitive difficulties, but the evidence shows no longitudinal treatment for a mental impairment.   In view of the mental health records, including the reporting of Dr. Pierce, the undersigned finds that the claimant is limited to work entailing *simple instructions* . . . .

23
24

(Id. 27-29 (emphasis added) (citations omitted)).[3]

25
26
27
28

---

[3]   Elsewhere in her decision, the ALJ also noted that medical records from the P.O.S.T. Rehabilitation Clinic in 2008 reflect that Plaintiff "can recall history and follow 1, 2, and 3 step commands."   (A.R. 24 (citing id. 298-303, 299)).

1    Plaintiff asserts that although the ALJ gave "significant
2 weight" to the uncontradicted opinion of Dr. Pierce, the ALJ erred
3 when she failed to include Dr. Pierce's limitation to simple one
4 and two part instructions in her RFC determination and in her
5 hypothetical to the VE, and never explained why she left it out.
6 (Joint Stip. 5-6, 7).  For the reasons stated below, the Court
7 agrees.

8

9    Because instructions may be simple, yet consist of more than
10 two parts, the Court does not find that the ALJ's limitation to
11 "simple instructions," is necessarily equivalent to Dr. Pierce's
12 asserted limitation that Plaintiff can remember and comply with
13 "simple one and two part instructions."  Although the ALJ states
14 that she gave "significant weight" to Dr. Pierce's evaluation (A.R.
15 29), nothing in the ALJ's decision explains her omission of Dr.
16 Pierce's finding that Plaintiff "can remember and comply with
17 simple *one and two part instructions*" (id. 420 (emphasis added)).
18 The Court finds that the ALJ was required to either include "simple
19 one and two part instructions" in her assessment of Plaintiff's
20 RFC, as it was "relevant" to Plaintiff's mental limitations (see 20
21 C.F.R. § 416.945(a)(1)), or, in the alternative, to give "clear and
22 convincing" reasons for rejecting Dr. Pierce's uncontradicted
23 opinion.[4]  See, e.g., Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194,

24
25    [4] A treating physician's opinion is generally entitled to
26 more weight than the opinion of a doctor who examined but did not
27 treat the claimant, and an examining physician's opinion is
28 generally entitled to more weight than that of a nonexamining
physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995); see
also Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988) (treating
(continued...)

1199; <u>Reddick</u>, 157 F.3d at 725; <u>Lester</u>, 81 F.3d at 830.   The ALJ did neither.

Accordingly, the omission of "simple one and two part instructions" from the RFC determination amounts to the omission of a limitation.   <u>See, e.g.</u>, <u>Calderon v. Astrue</u>, No. ED CV 11-1180-PLA, 2012 WL 2806266, at *4 (C.D. Cal. July 6, 2012) (where the ALJ gave "great weight" to Dr. Pierce's opinion, the omission from the RFC of the limitation to simple one and two step instructions was error); <u>Smiddy v. Astrue</u>, No. ED CV 10-1453 PJW, 2011 WL 4529473, at *1-2 (C.D. Cal. Sept. 29, 2011) (ALJ erred in failing to address Dr. Pierce's assessed limitations); <u>Boltinhouse v. Astrue</u>, No. ED CV 10-1412 PJW, 2011 WL 4387142, at *1 (C.D. Cal. Sept. 21, 2011) (characterizing Dr. Pierce's assessment that plaintiff could remember and comply with simple one and two part instructions as a limitation).   "[An] RFC that fails to take into account a claimant's limitations is defective."   <u>Valentine v. Comm'r</u>, 574 F.3d 685, 690 (9th Cir. 2009); <u>see also</u> C.F.R. § 416.945(a)(4).

Based on the foregoing, the Court finds the ALJ erred in failing to properly credit or discredit Dr. Pierce's limitation to "simple one and two part instructions."

---

[4] (...continued)
physician's conclusions "must be given substantial weight").   The ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons."   <u>Lester</u>, 81 F.3d at 830-31.

12

**B.    The ALJ's Error Was Not Harmless**

Plaintiff notes that the DOT defines jobs consisting of reasoning level 2 tasks, such as those of hand packager and industrial cleaner, to "apply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" (Joint Stip. 8 (emphasis added) (quoting DOT App. C)), while jobs involving reasoning level 1 require "commonsense understanding to carry out *simple* one- or two-step instructions" (id. (emphasis added) (quoting DOT App. C)).  He argues that because the VE "did not get to consider Dr. Pierce's limitation to one- and two-part instructions," the hypothetical question to the VE was incomplete and, had it been included, "the limitation . . . would eliminate the [reasoning level 2] work identified by the [VE]."  (Id. at 9). As discussed below, this is not necessarily true.

Defendant contends that although Dr. Pierce opined that Plaintiff could generally complete "simple and repetitive vocational work," Dr. Pierce did not state whether Plaintiff could or could not perform tasks involving more than two-part instructions.  (Id. 10).  Therefore, defendant claims that the ALJ appropriately interpreted Dr. Pierce's opinion in limiting Plaintiff to being able to carry out "simple instructions."  (Id. 10).  The Court is not persuaded by this argument and finds that the ALJ's error was not harmless.

A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves."  Meissl v. Barnhart,

403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).  Reasoning development is one of three divisions comprising the General Educational Development ("GED") Scale.[5]  DOT App. C.  The DOT indicates that there are six levels of reasoning development.  <u>Id.</u>  Level 2 provides that the claimant will be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."  <u>See, e.g.</u>, DOT Nos. No. 920.587-018 (hand packager), 381.687-018 (industrial cleaner).

As explained by the court in <u>Meissl</u>, the Social Security Regulations contain only two categories of abilities in regard to understanding and remembering things:  "short and simple instructions" and "detailed" or "complex" instructions.  <u>Meissl</u>, 403 F. Supp. 2d at 984.  The DOT has many more gradations for measuring this ability, six altogether.  <u>Id.</u>  The court explained:

> To equate the Social Security regulations use of the term
> "simple" with its use in the DOT would necessarily mean
> that all jobs with a reasoning level of two or higher are
> encapsulated within the regulations' use of the word
> "detail."  Such a "blunderbuss" approach is not in
> keeping with the finely calibrated nature in which the

---

[5]  The GED scale "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college.  However, it may be obtained from experience and self-study."  DOT App. C.

DOT measures a job's simplicity.

Id.

Another district court has held that a limitation either to "simple, routine" instructions, or to "one-to-two step instructions" in an RFC can be consistent with reasoning level 2, and does not preclude a claimant as a matter of law from performing jobs classified at that level. Hann v. Colvin, No. 12-cv-06234-JCS, 2014 WL 1382063, at *16, 18 (N.D. Cal. Mar. 28, 2014) (citing Meissl, 403 F. Supp. 2d at 982 (claimant limited to "simple tasks performed at a routine or repetitive pace" not precluded from performing unskilled past job with a reasoning level of 2), Eckard v. Astrue, No. 1:11cv0516 DLB, 2012 WL 669895, at *7 (E.D. Cal. Feb. 29, 2012) (no conflict between the DOT and the VE's testimony where claimant limited to jobs involving "simple one or two step job instructions" and jobs requiring reasoning level 2), Kellerman v. Astrue, No. C 11-4727 PJH, 2012 WL 3070781, at *5 (N.D. Cal. July 27, 2012) (finding no conflict between level 2 reasoning and a limitation to simple one or two step instructions)). Conversely, such a limitation does not necessarily mean that as a matter of law a claimant *can* perform all jobs requiring reasoning level 2. Id. (citing Dugas, No. 1:07-CV-605, 2009 WL 1780121, at *6 (E.D. Tex. June 22, 2009)); see also Munoz v. Astrue, ED CV 11-2042-E, 2012 WL 2974669, at *3 (C.D. Cal. July 20, 2012) (noting that decisions considering this issue are not consistent).

The Court finds the recent case of Munoz, 2012 WL 2974669 at

*3, a case with similar facts to the instant case, instructive.  In
_Munoz_, the plaintiff asserted disability based on alleged mental
impairments.  _Id._ at *1.  The consultative physician diagnosed a
depressive disorder, and opined that Munoz was "able to understand,
remember, and carry out simple one or two-step job instructions,"
and is able "to do detailed and complex instructions."  _Id._  The
state agency physician opined that Munoz could perform "at least
simple 1-2 step tasks," but also opined that Munoz is "'moderately
limited' in his 'ability to carry out detailed instructions.'"  _Id._
(citations omitted).  The ALJ's RFC found that Plaintiff can
perform "only 'one-to two step instruction jobs,'" and the VE
testified that Munoz could perform his past relevant work as a
warehouse worker, work that requires reasoning level 2.  _Id._
(citations omitted).  The ALJ failed to ask the VE whether his
testimony was consistent with the information in the DOT, and the
VE did not independently clarify.  _Id._ at *2.  Noting the failure
to inquire on the record as to whether the VE's testimony was
consistent with the information in the DOT, the Court stated that
"[w]hether this error was material depends on whether there existed
'an apparent unresolved conflict' between the [VE's] testimony and
the DOT."  _Id._

    The _Munoz_ Court noted that several district courts "have
discerned material error in administrative decisions in which ALJs
have found that claimants who were limited to 'one-to-two step
instruction' jobs could perform jobs requiring Level 2 reasoning,"
while at least one district court, the Eastern District,
"repeatedly has refused to discern any material error in

16

administrative decisions in which ALJs have found that claimants "who were limited to 'one-to-two step instruction' jobs could perform jobs requiring Level 2 reasoning." Id. at *3 (citations omitted). Noting that these decisions were neither consistent nor binding, the Munoz Court found that the decisive question before it was the intendment of the ALJ's residual functional capacity finding (as incorporated into the hypothetical posed to the vocational expert)," specifically: "Did *this* ALJ find that *this* severe mental impairment limited *this* Plaintiff to jobs requiring only Level 1 reasoning?" Id. (citing Gonzales v. Astrue, 2012 WL 14002, at *12 (E.D. Cal. Jan. 4, 2012) (suggesting that the difference in courts' conclusions whether an RFC limitation for simple, one-to-two step instructions is compatible with the DOT reasoning level 2 appears to be predicated on the particular facts of each case, and what the ALJ's or the physician's words of limitation meant in the context of the medical evidence in the record).

In making its determination, the Munoz Court considered three nonexclusive factors: (1) in defining the claimant's RFC, did the ALJ choose language closely paralleling the language of the DOT's definition of level 1; (2) did the physician(s) whose opinions the ALJ cited with approval also use language nearly identical to the language of level 1 ("simple one-two step tasks"); and (3) does the record contain some evidence that the plaintiff's mental impairments have reduced his functioning below level 2 reasoning. Id. Finding the ALJ's intendment "unclear," the Court concluded that remand for clarification was appropriate. The same result is

17

appropriate here.

### 1.    The ALJ's Language

In determining Plaintiff's RFC to include a limitation to "simple instructions," the ALJ chose language more closely resembling the DOT definition of reasoning level 1, which requires the ability "to carry out *simple* one- or two-step *instructions*." Although as previously noted there are numerous cases in this and other districts that find that such a limitation is not necessarily exclusive of level 1 jobs, without clarification from the ALJ as to her intendment, such an inference under the circumstances of this case would be merely speculative.

### 2.    The Physicians' Language

Dr. Pierce and the reviewing examiner, Dr. Conte, both used language that was nearly identical to the language of reasoning level 1, requiring the ability "to carry out *simple* one- or two-step *instructions*."

For instance, Dr. Pierce stated that Plaintiff could perform "*simple* and repetitive vocational skills," and could "remember and comply with *one and two part instructions*" (A.R. 420 (emphasis added)). Additionally, Dr. Pierce not only stated that Plaintiff "may retain the capacity to complete simple and repetitive vocational skills," but also stated that Plaintiff's "*[r]easoning capacities* are judged potentially capable *to this lower level* . .

. but that *these* are not completely precluded." (Id. 420 (emphasis added)).   Although Dr. Pierce's opinion is somewhat inartfully worded and therefore, ambiguous, it can be inferred that by specifically referring to Plaintiff's reasoning capacities, and then referring to "this lower level," Dr. Pierce was referring to Plaintiff's "capacity to complete simple and repetitive vocational skills," and that it was his intent to limit Plaintiff to occupations with "lower level" 1 reasoning. Dr. Pierce's statement that Plaintiff "could concentrate *just* adequately" to be able to complete a regular work schedule and work week (id. (emphasis added)), also may imply that Dr. Pierce finds Plaintiff's reasoning capacities more severely limited than might be acceptable for a reasoning level 2 position.

Dr. Conte's opinion, which the ALJ also gave significant weight to, specifically noted that Plaintiff was "moderately limited" in his ability to understand, remember, and carry out *detailed* instructions.  (Id. 437).  He stated that Plaintiff was "not significantly limited" in his ability to understand, remember, and carry out *very short and simple instructions*.  (Id.).  He concluded that Plaintiff could "sustain *simple*, repetitive tasks with adequate persistence and pace."  (Id. 439).

Dr. Conte's limitation to short and simple instructions is consistent with the wording of reasoning level 1 and his opinion that Plaintiff was "moderately limited" in his ability to understand, remember, and carry out detailed instructions, appears to be inconsistent with reasoning level 2's requirement of being

1  able to carry out "*detailed* but uninvolved . . . instructions."

2  See also, Munoz, 2012 WL 2974669, at *4 (reviewing examiner's

3  opinion that plaintiff moderately limited in his ability to carry

4  out detailed instructions constitutes "some evidence" that

5  plaintiff's mental impairments have reduced his functioning below

6  level 2 reasoning).  Thus, it can be inferred that Dr. Conte

7  intended to limit Plaintiff to occupations at level 1 reasoning.

8

9       **3.   Other Record Evidence**

10

11       The third factor in Munoz is whether some evidence supports

12  the finding that Plaintiff's functioning is reduced below reasoning

13  level 2.  The record reflects a lack of longitudinal evidence with

14  regard to Plaintiff's mental impairments.  (See A.R. 29).  This may

15  weigh against a finding that Plaintiff's mental impairments have

16  reduced his functioning below reasoning level 2.

17

18       However, as in Munoz, the ALJ's failure to include (or reject

19  with a clear and convincing reason) Dr. Pierce's limitation to one

20  and two part instructions, or to let her "intendment" be clear with

21  respect to Plaintiff's reasoning level limitations, if any, was

22  compounded by her failure to ask the VE whether her testimony was

23  consistent with the information in the DOT, and the VE did not

24  volunteer this information.[6]  (Id. 58-68).  Nevertheless, the ALJ's

25  decision states that "the undersigned has determined that the

26  vocational expert's testimony is consistent with the information

27       [6]   The Court notes that this issue was not raised by the

28  parties.

contained in the [DOT]."  (Id. 16).

The ALJ has an affirmative responsibility to ask whether a conflict exists between the testimony of a VE and the DOT.  Soc. Sec. Ruling ("SSR") 00-4p, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).  If there is a conflict between the DOT and testimony from the VE, an ALJ may accept testimony from a VE that contradicts the DOT, but "the record must contain 'persuasive evidence to support the deviation.'" Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). The ALJ must resolve any conflict by determining whether the VE's explanation is reasonable and provides sufficient support to justify deviating from the DOT. SSR 00-4p, 2000 WL 1898704, at *4; Massachi, 486 F.3d at 1153.  An ALJ's failure to do so can be harmless error when there is no conflict or when the VE provides a basis for relying on her testimony rather than on the DOT. Massachi, 486 F.3d at 1154 n.19.  Reasonable explanations for deviating from the DOT may include that the DOT "does not provide information about all occupations, information about a particular job not listed in the [DOT] may be available elsewhere, and the general descriptions in the [DOT] may not apply to specific situations." Id. at 1153, n.17 (citing SSR 00-4p, 2000 WL 1898704, at *2-3).

In this case, the ALJ did not question the VE as to whether her opinion deviated from the DOT.  In fact, there is absolutely no discussion of the apparent conflict between the limitation to

"simple instructions," and the VE's determination that Plaintiff could perform the requirements of positions requiring level 2 reasoning. Without the required testimony by the VE on this issue, the record lacks substantial evidence that a person limited to "simple instructions," based on the ALJ's unstated "intendment" behind that term, can perform the work of hand packager and industrial cleaner – positions requiring level 2 reasoning skills. The ALJ's perfunctory statement that she determined the VE's testimony was consistent with the information contained in the DOT (A.R. 31) is not sufficient to "properly supply the vocational evidence necessary to depart from the DOT." Munoz, 2012 WL 2974669, at *5 (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 794 (9th Cir. 1997) (an explanation and "persuasive" supporting evidence must accompany any administrative deviation from the DOT), Burkhart v. Bowen, 845 F.2d 1335, 1341 (9th Cir. 1988) (administration may not speculate concerning the requirements of particular jobs)). Under the circumstances of this case, the ALJ's failure to question the VE as to whether her opinion deviated from the DOT, was not harmless error.

Additionally, the lack of longitudinal treatment evidence in the record for Plaintiff's mental impairments makes it even more critical for the ALJ to clarify whether reasoning level 2 work was intended and to obtain testimony from a VE as to any inconsistency with the DOT, in order to determine whether Plaintiff could perform work at reasoning level 2.

**C.   Remand Is Appropriate**

Given the lack of evidence of "longitudinal treatment for a mental impairment" (A.R. 29), and the weight given by the ALJ to the uncontradicted opinions of Dr. Pierce and Dr. Conte and the resulting ambiguities in the ALJ's assessment of Plaintiff's RFC, the Court cannot confidently conclude that the ALJ's error in failing to include Dr. Pierce's limitation to one and two part instructions, or that her failure to determine whether the VE's testimony was consistent with the DOT, is harmless. Stout v. Comm'r, 454 F.3d 1050, 1056 (9th Cir. 2006); see also Calderon, 2012 WL 2806266, at *4.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. McLeod, 640 F.3d at 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

On remand the ALJ should (1) clarify the weight she gives to

the opinions of Dr. Pierce and Dr. Conte and, either include Dr. Pierce's limitation to "simple one and two step instructions" in Plaintiff's RFC, or, in the alternative, give "clear and convincing" reasons for rejecting Dr. Pierce's uncontradicted opinion regarding this limitation; (2) seek clarification from the VE regarding jobs that exist in significant numbers in the local or national economy, in light of the hypothetical(s) provided and any intended limitations with respect to reasoning level; (3) determine whether the VE's testimony is consistent with the DOT, including with respect to reasoning level; and (4) seek an explanation from the VE of any apparent inconsistency between the VE's testimony and the DOT's description of the representative occupations.

**CONCLUSION**

For all of the foregoing reasons, this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  August 28, 2014.

/s/
_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE